## MARYLAND v. SOPER, JUDGE. (No. 2)

### PETITION FOR A WRIT OF MANDAMUS.

No. 24 Original.  Argued December 7 1925.—Decided February 1, 1926.

An indictment in a state court charging federal prohibition agents with a conspiracy to obstruct justice by giving false testimony at a coroner's inquest concerning a homicide for which they were then under arrest and subsequently were indicted for murder, is not removable to the federal court under § 33 of the Judicial Code, even though the murder charge would be removable as one commenced " on account " of their official acts.  P. 42.

Mandamus made absolute.

PETITION by the State of Maryland for a writ of mandamus directing the United States District Judge of the District of Maryland to remand to the proper state court an indictment for conspiracy to obstruct justice by false testimony, which had been removed to the District Court under the provisions of § 33 of the Judicial Code.  See also the case next preceding.

*Messrs. Thos. H. Robinson,* Attorney General of Maryland, and *Herbert Levy,* Assistant Attorney General of Maryland, for petitioner.

If any reports were required of these federal officers, it was their duty to make them to their superior.  Unless the words " act done under color of his office or any such law " in § 33 of the Judicial Code are to be deprived of all meaning and effect, they clearly render the provisions of that statute inapplicable to the case at bar.  If it can

be claimed that a report made to a coroner's inquest is a report made under color of office or of a revenue law, then an action arising out of any slanderous statement made by a revenue officer in the course of his private and personal transactions can also be removed. If the prosecution in this case can be removed, then any action or prosecution, no matter how personal its nature or how unconnected with the official capacity of the revenue officer, can be removed. The essence of the offense charged against the officers was a conspiracy to commit perjury before the coroner's inquest. See *Thomas* v. *Loney,* 134 U. S. 372, holding: "the power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the government in whose tribunals that proceeding is had."

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* was on the brief, for respondent.
· The prosecution for conspiracy to obstruct justice was properly removable, notwithstanding that the defendants expressly denied having conspired. This Court has declared that " even the most unquestionable and most universally applicable of state laws, such as those concerning murder," will not be allowed to control the conduct of federal officers in certain cases. *Johnson* v. *Maryland,* 254 U. S. 51. And in numberless instances federal officers, accused in the state courts of murder, have been removed for trial to the federal courts, or have even been released on *habeas corpus* without having to stand any trial at all.

Where a federal officer held in state custody claims the protection of the federal court, either by petition for *habeas corpus,* or by petition for removal, the court may look behind the actual indictment to ascertain whether the act was really done under color of federal authority. *In re Neagle,* 135 U. S. 1; *Virginia* v. *Felts,* 133 Fed. 85; *Virginia* v. *De Hart,* 119 Fed. 626; *Ex parte Jenkins,* Fed. Cas. No. 7259. Removal has been granted in many cases

and upon an almost endless variety of charges. The following will serve as illustrations: *Findley* v. *Satterfield,* Fed. Cas. No. 4792; *Virginia* v. *Felts,* 133 Fed. 85; *Virginia* v. *De Hart,* 119 Fed. 626; *Delaware* v. *Emerson,* 8 Fed. 411; *Virginia* v. *Bingham,* 8 Fed. 561; *Buttner* v. *Miller,* Fed. Cas. No. 2254; *Warner* v. *Fowler,* Fed. Cas. No. 17182.

The purpose of the removal statute, as recognized in *Tennessee* v. *Davis,* is twofold: First, to protect the functions of the Federal Government from being hindered by the possible unfriendly action of States and to prevent its officers from being withdrawn from their duty and held in confinement by state authorities; and, second, to protect the officers themselves. Both of these purposes can be defeated as well by indictments for acts which the officers deny altogether as by indictments for acts which they admit having done, but for which they claim justification under federal law.

It is argued that the indictment for conspiracy has no reasonable connection with their acts done under federal authority. But it must be remembered that the charge of conspiracy is bound up with the charge of murder, and that the same train of circumstances led up to both. It is submitted that the case can not be disposed of upon the simple theory that federal officers can never be called upon to commit "conspiracy" in the abstract. The name given to the charge is immaterial. The court must look behind the name to the actual circumstances under which it arose. Judged by this test, the present charge of conspiracy bears a direct relation to the acts done by the accused "under color of their office" and "under color of the revenue laws of the United States." And if that is true, then the prosecution was properly removable to the federal court. It is "color of office" and "color of the law" which the statute makes ground for removal of the cause. "Color of office" covers something which may prove in-

sufficient as a defense, as well as that which may prove sufficient. The removal statute on this point differs sharply from the statute which confers upon federal officers the right to be discharged upon *habeas corpus.*

The decision of the District Court granting the petition for removal, and denying the motion to remand, was an exercise of lawful judicial discretion, and can not be controlled by mandamus.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a petition for mandamus by the State of Maryland to require the District Court of the United States for that State to remand to the state Circuit Court for Harford County an indictment by the grand jury of that county for obstructing justice of the State by false testimony. The indictment had been removed from the circuit court to the federal court in asserted compliance with § 33 of the Judicial Code. The amended petition of removal, upon the sufficiency of which the application of § 33 turns, discloses the same state of facts as that shown in the mandamus case between the same parties, just decided. The indictment charges that the same defendants as were there charged with murder conspired in a hearing before a justice of the peace of Harford County, acting as the coroner with a jury and engaged in the official duty of inquiring into the manner of the death of Lawrence Wenger on November 20, 1924, to deceive the coroner and jury by withholding the facts concerning Wenger's death, and falsely asserting ignorance thereof, in order to induce them to return a false and erroneous verdict, and thus to obstruct justice in violation of a criminal statute of Maryland. This testimony was given the day after Wenger's death while the defendants were under arrest on the charge of murder, and the indictment in this case was returned at the same time as the indictment for murder.

The amended petition of defendants for removal avers that " on the afternoon of November twentieth your petitioners were called before the Coroner's Inquest heretofore described in the indictment, and freely and without reservation in accordance with their duty as investigating and reporting officers of the Federal Government and acting under the direction of the Maryland Federal Prohibition Director, related the facts before mentioned. And thereupon they were again placed in the Harford County jail and held for the action of the Harford County Grand Jury." The amended petition concludes with the statement that "The said indictment is now pending in the Circuit Court for Harford County and is a criminal prosecution on account of acts alleged to have been done by your petitioners at a time when they were engaged in the performance of their duties as Federal Prohibition Officers and chauffeur for Federal Prohibition Officers as set forth in the aforegoing paragraphs."

The record in this case is in all respects like that in the case just decided, except that the prosecution is for obstruction of justice. The orders of the federal District Court, the other proceedings, the stipulation as to evidence, the petition for mandamus, and the return of Judge Soper to the rule issued on the petition of the State for mandamus, are all similar.

Counsel for the State of Maryland argue that the accused officers were in no sense acting in their official capacity when engaged in the alleged conspiracy to deceive the coroner, that their duty had been discharged when they destroyed the still, that their subsequent reports of what had happened to their federal superiors are not the subject of this prosecution, that the indictments for conspiracy and perjury were based not on acts which the defendants had done in pursuance of federal law and in discharge of their duty to the federal Government, but on testimony given by them under their obligations to

the State as individuals and for which they were detained in `jail. To this it is answered, on behalf of the United States, as follows:

" But how did the officers come to be in jail? If they had not been engaged in the performance of their duties as federal officers they would never have been there. When they found Wenger's body, they had just come from performing their duty and were on their way back to report officially to their superior. At that time they were still acting in their official capacity. *United States v. Gleason,* 1 Wool. C. C. 128. In immediately seeking for a physician and in reporting Wenger's death at once to the State's Attorney, they were doing the only reasonable act which could be expected of them, both as p⸱blic officers and as private citizens. But, as their petition alleges, the State's Attorney, on being informed by them that ' your petitioners . . . were prohibition officers,' ordered them to be at once placed under arrest.

" If they had not discovered Wenger and reported his murder, there would have been no need for them to testify before the Coroner's jury, and there would have been no occasion for any charge of conspiracy. The two charges, it is submitted, are so closely inter-related that they can not properly be separated. The charge of murder gave rise to the charge of conspiracy. If the former charge is removable to the Federal court, it is submitted that the latter should be removable also.

" Considerable danger would be involved in a contrary holding. If charges of murder alleged to have been committed by Federal officers are removable, and charges of conspiracy and similar offenses are not removable, an obvious expedient would suggest itself. In localities where the administration of particular Federal laws is unpopular, Federal officers need no longer be dragged before hostile state tribunals on charges such as murder, on which they may successfully claim removal and plead self-defense.

The charge can readily be altered to 'conspiracy' or to some other crime, which the accused officers deny having committed at all, but on which it will be clear that removal can not be obtained. The actual charge will serve merely as a cloak to obtain the desired end, namely, incarceration of an unpopular officer. In this way the functions of the Federal Government may be harassed or impeded and its officers withdrawn from their duty as effectively as by prosecutions for homicide actually committed in self-defense. This method may easily become as effective as out-and-out nullification of Federal laws."

We may concede that the reports of the officers to their federal superiors were within their official duty, but it does not follow that whatever happened between the events at the place of the still and the return to Baltimore to make report was within the protection of their official immunity. It depends upon the nature of that which they did in the interval. The right of the State to inquire into suspected crime in its territory justifies the use of investigation by its officers and the questioning of suspected persons under oath. The response of the federal officer under suspicion to such questioning is not an act of his under federal authority.

Of course one can state a case in which acts not expressly authorized by the federal statutes are such an inevitable outgrowth of the officer's discharge of his federal duty and so closely interrelated with it as necessarily to be within the protection of § 33.

Thus removals of prosecutions on account of acts done in enforcement of the revenue or prohibition laws or under color of them properly include those for acts committed by a federal officer in defense of his life, threatened while enforcing or attempting to enforce the law. Such acts of defense are really part of the exercise of his official authority. They are necessary to make the enforcement effective.

This is as far as the case of *United States* v. *Gleason, supra,* 25 Fed. Cases 1335, No. 15,216, cited by government counsel, would by analogy carry us. That was a charge to the jury by Mr. Justice Miller in the trial of a federal criminal indictment under a statute punishing the obstruction of a federal officer in arresting an army deserter which caused the death of the officer. The Justice said to the jury that if the officer, having been obstructed, was retreating with a view of making other arrangements to perform his duty of arresting, he was still employed in arresting deserters. It was not necessary, to render his killing an offense against the United States, that he should be engaged in the immediate duty of arrest. " The purpose of the law is to protect the life of the person so employed, and this protection continues so long as he is engaged in a service necessary and proper to that employment." But the indictment which is here removed is for acts not thus closely connected with, and included in, the attempted enforcement of the federal law.

The defendants, when called upon to testify before the coroner, were not obliged by federal law to do so. Indeed, even under state law, they might have stood mute, because the proceeding was one in which they were accused of crime. They themselves show that they voluntarily made the statements upon which these' indictments were founded. While of course it was natural that if not guilty they should have responded fully and freely to all questions as to their knowledge of the transaction, with a view of showing their innocence, nevertheless their evidence was not in performance of their duty as officers of the United States.

In answer to the suggestion that our construction of § 33 and our failure to sustain the right of removal in the case before us will permit evilly minded persons to evade the useful operations of § 33, we can only say that, if prosecutions of this kind come to be used to obstruct

seriously the enforcement of federal laws, it will be for Congress in its discretion to amend § 33 so that the words " on account of " shall be enlarged to mean that any prosecution of a federal officer for any state offense which can be shown by evidence to have had its motive in a wish to hinder him in the enforcement of federal law, may be removed for trial to the proper federal court. We are not now considering or intimating whether such an enlargement would be valid; but what we wish to be understood as deciding is that the present language of § 33 can not be broadened by fair construction to give it such a meaning. These were not prosecutions, therefore, commenced on account of acts done by these defendants solely in pursuance of their federal authority. With the statute as it is, they can not have the protection of a trial in the federal court, however natural their denials under oath of inculpating circumstances. As the indictment in this case was not removable under § 33, the mandamus to the Judge of the District Court to remand it to the Circuit Court for Harford County, Maryland, must be made absolute. The writ need not issue, however, as Judge Soper's return indicates that he will act upon an expression of our views.

*Messrs. Thos. H. Robinson,* Attorney General of Maryland, and *Herbert Levy,* Assistant Attorney General of Maryland, for petitioner.