**Michael LEFTON et al., Petitioners,.**

**v.**

**The CITY OF HATTIESBURG, MISSISSIPPI, Respondent.**

**No. 21441.**

United States Court of Appeals
Fifth Circuit.

June 5, 1964.

---

Bruce C. Waltzer, Benjamin E. Smith, New Orleans, La., William M. Kunstler, Arthur Kinoy, New York City, Jack Peebles, New Orleans, La., for petitioners.

Before RIVES, BELL and WRIGHT,\* Circuit Judges.

### J. SKELLY WRIGHT, Circuit Judge:

This proceeding involves the access of litigants to the federal courts. Over forty defendants in criminal prosecutions in a state court of Mississippi seek to remove the causes into the United States District Court under 28 U.S.C. § 1446. The clerk of the United States District Court for the Southern District of Mississippi, acting under local court rules, refuses to accept for filing the single removal petition covering all 40-odd state prosecutions, and the defendants seek a mandamus against the judge of the District Court to require that such filing be permitted. The application for mandamus states that the District Court practice "limits and prohibits any effective use of the criminal removal provisions covering civil rights cases in that district."

It appears from the papers before us that the petitioners were charged with violations of H.B. 546, 1964 Sess.Miss. Leg., a statute which denounces picketing and demonstrations in the environs of public buildings. The statute, set out in the margin,[1] was enacted by the Mississippi Legislature on April 8, 1964. The 40-odd petitioners were arrested in Hattiesburg, Mississippi, on April 10. According to the sworn removal petition:

"Petitioners are members of the Student Non-Violent Coordinating Committee, affiliated with the Conference of Federated Organizations, both Civil Rights groups, and were at the time of their arrests, engaged in a voter registration drive in Forrest County, Mississippi, assisting Negroes to register so as to enable them to vote as protected under the Federal Constitution and the Civil Rights [statute]."

On April 13, the verified removal petition was refused filing by the District Court, through its clerk, for the following reasons·

---

\* Of the D.C.Circuit, sitting by designation.

1. "AN ACT to prohibit the unlawful picketing of state buildings, courthouses, public streets, and sidewalks.

"Be it enacted by the Legislature of the State of Mississippi:

"Section 1. It shall be unlawful for any person, singly or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or interfere with free ingress or egress to and from any public premises, State property, county or municipal courthouses, city halls, office buildings, jails, or other public buildings or property owned by the State of Mississippi or any county or municipal government located therein or with the transaction of public business or administration of justice therein or thereon conducted or so as to obstruct or interfere with free use of public streets, sidewalks or other public ways adjacent or contiguous thereto.

"Section 2. Any person guilty of violating this act shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than Five Hundred Dollars ($500.00), or imprisoned in jail not more than six (6) months, or both such fine and imprisonment.

"Section 3. This act shall take effect and be in force from and after its passage."

(1) The petition was in behalf of more than one individual.

(2) It was not accompanied by a filing fee of $15.00 per individual.

(3) It was not accompanied by a removal bond of $500.00 per individual.

(4) It was not signed by a member of the bar of the Southern District of Mississippi.

Petitioners' "Alternative Petition for a Writ of Mandamus," seeking to require the judge of the District Court to have the petition filed, was filed in this court on April 13 under Rule 13a.[2] We have authority under Rule 13a to order that the District Judge be made a respondent in these mandamus proceedings and to fix a time for him to file an answer. Out of deference to judicial decorum, however, we did not do so, but ordered that the application for mandamus be held in abeyance to permit the petitioners to take such further action in the District Court as they deemed advisable, or to file supplemental papers with us. At the same time, we also issued a *per curiam* [3] setting forth the considerations

2. Rule 13a of this court reads:

"(a) Petition for Writ; Service and Filing. Application for a writ of mandamus or of prohibition directed to a judge or judges shall be made by filing a petition therefor with the clerk with proof of service on the respondent judge or judges and on all parties to the action in the district court. The petition shall contain a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the issues presented and of the relief sought; a statement of the reasons why the extraordinary writ of mandamus or prohibition should issue; and copies of any order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition. The petition may be accompanied by supporting brief or memorandum. Upon receipt of the prescribed docket fee the clerk shall docket the petition and submit it to the court.

"(b) Denial; Order Directing Answer. If the court is of the opinion that the writ should not be granted, it shall deny the petition. Otherwise, it shall order that an answer to the petition be filed by the respondents within the time fixed by the order. The order shall be served by the clerk on the judge or judges named respondents and on all other parties to the action in the district court. All parties other than the petitioner shall also be deemed respondents with the judge or judges named respondents for all purposes. Respondents may answer jointly. If the judge or judges named respondents do not desire to contest the petition, they may so advise the clerk and all parties by letter but the petition shall not thereby be taken as admitted. If briefs are required, the clerk shall advise the parties of the dates on which they are to be filed.

The proceeding shall be given preference over ordinary civil cases.

"(c) Form of Papers; Number of Copies. All papers may be typewritten. Four copies, including an original, shall be filed with the clerk, but the clerk may direct that additional copies be provided."

3. The *per curiam* reads:

"This is an application for writ of mandamus, seeking to secure the filing in the District Court of a petition removing a number of criminal causes from the City Court of Hattiesburg, Mississippi, to the District Court, under 28 U.S.C. § 1446. The petition alleges that the District Court clerk, acting under local rules of court, refused to file the criminal removal petition for these reasons: (1) It was in behalf of more than one individual. (2) It did not have attached a removal bond of $500 for each. We note that Congress has provided in the removal statute that 'A defendant *or defendants* desiring to remove any * * * criminal prosecution * * * shall file *a* verified petition * * *.' 28 U.S.C. § 1446(a) (emphasis added). The statute also provides for removal bonds only for *civil* cases. 28 U.S.C. § 1446(d). The Reviser's Notes state: '[T]he requirement for cost bonds is limited to civil actions in conformity with the more enlightened trend of modern procedure to remove all unnecessary impediments to the administration of criminal justice.' 28 U.S.C.A. § 1446 Note. The stated grounds for refusal to file, whether or not authorized by local rule of court, would thus seem to be improper under the governing Act of Congress.

"The application before us also recites that the criminal removal 'petition did not contain the signature of an attorney licensed to practice before the United

which moved us in making our decision not to invoke immediately the process of Rule 13a. Thus we intended that the petitioners and the District Court have the advantage of our views on the matter so that they could act accordingly. Subsequently, the petitioners have filed supplemental pleadings and affidavits in this court, copies of which have been sent to the District Judge and the prosecution below; the District Judge has favored us with memoranda of points and authorities, copies of which have been sent to petitioners' counsel.

In order to render unnecessary formal mandatory procedure under Rule 13a, it appears that a fuller expression of our understanding of the governing law may now be appropriate. We shall consider *seriatim* each of the reasons advanced by the District Court for refusal to accept the removal petition for filing.

### I.

■ With reference to the number of persons who may join in a single petition, the removal statute provides:

"A defendant or defendants desiring to remove any * * * criminal prosecution from a State court shall file * * * a verified petition * * *." 28 U.S.C. § 1446(a).

The primary question presented in these proceedings is whether the 40-odd petitioners who were arrested at the same time and place and charged with violating the same state statute are required to bring separate, individual removal proceedings under the federal removal statute because the Mississippi officials have charged each petitioner individually and separately. Since this question involves the interpretation of a federal statute, neither state law nor local rules promulgated by the District Court can provide the answer.

On its face the removal statute authorizes the removal of any "criminal prosecution from a State court," irrespective of the number of "defendants desiring to remove." The statute speaks in terms of a single prosecution with one or more defendants. Thus the language of the statute, strictly interpreted, would seem to require a separate petition for removal for every state criminal prosecution.

■ ■ In civil rights cases, however, Congress has directed the federal courts to use that combination of federal law, common law, and state law as will be best "adapted to the object" of the civil rights laws. Rev.Stat. § 722 (1875), applying to Title XIII, Rev.Stat.; 42 U.S.C. § 1988; see 28 U.S.C. § 1443, formerly Rev.Stat. § 641 (1875); 42 U.S. C.A. § 1988 Note. Therefore a federal court is required to use common law powers to facilitate, and not to hinder, "[p]roceedings in vindication of civil rights." 42 U.S.C. § 1988. To facilitate, and not to hinder, "proceedings in vindication of civil rights," under the circumstances of this case, we think it would be quite appropriate for a District Court to accept the joint removal petition herein presented.

States District Court, Southern District of Mississippi, as required by local rules promulgated March 6, 1940,' and 'That the individuals bringing this removal action and their attorneys are unable to obtain the assistance and/or association of any attorneys, contacted to date, to assist in this matter.' It does not appear whether this was an additional ground for refusal to file the petition. See 28 U.S.C. § 1654; Brasier v. Jeary, 8 Cir., 256 F.2d 474 (1958); Kovrak v. Ginsburg, 3 Cir., 280 F.2d 209 (1960). It also does not appear whether the attorney who did sign the petition had requested admission to the District Court bar *pro hac vice*, or waiver of the rule because of unavailabil-

ity of local counsel. We cannot assume that, if local counsel are unavailable, the District Court would close its doors on these litigants or their attorney, who is a member of the United States Supreme Court bar. Unless supplemental affidavits showing this to be in fact the case should be presented to us, we would have no occasion to grant the writ.

"The application will be held in abeyance for fifteen days and jurisdiction will be retained. Applicant may file supplemental affidavits, or take such further action in the District Court as he deems advisable. If no further papers have been filed within the indicated period, the application will be denied."

On the present record, however, if the District Court declines to do so and insists upon separate petitions, and further assuming that such a requirement does not so delay matters as to operate to deprive the petitioners of effective access to the federal courts, we would not find the requirement to be such a gross abuse of discretion as to move us to mandamus. We commend this decision to the informed discretion of the District Court.

## II.

Filing fees are not to be collected in connection with criminal removal petitions. Such fees are regulated by statute, and a comparison of the present statute with its predecessor shows that there is now no authority for the clerk to charge fees in such proceedings.

The former statute provided for fees in criminal proceedings:

"Upon the institution of any suit or proceeding, whether by original process, removal, indictment, information, or otherwise, there shall be paid by the party or parties so instituting such suit or proceeding * * the sum of $5." Former 28 U.S.C. § 549 (1940 ed.).

The present statute does not authorize fees in criminal proceedings:

"The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $15 * * *." 28 U.S.C. § 1914 (1948 ed.).

## III.

The Act of Congress providing for removal bonds does not authorize them in criminal cases:

"Each petition for removal of a civil action or proceeding * * * shall be accompanied by a bond * * *." 28 U.S.C. § 1446(d).

If there were any doubt as to whether this limitation was intentional, the Reviser's Notes are clear: "[T]he requirement for cost bond is limited to civil actions in conformity with the more enlightened trend of modern procedure to remove all unnecessary impediments to the administration of criminal justice." 28 U.S.C.A. § 1446 Note. Therefore such bonds may not be required.

## IV.

The District Court has a broad discretion concerning admission to practice before it. See 28 U.S.C. § 1654. But, of course, such rules may not be allowed to operate in such a way as to abridge the right of any class of litigants to use the federal courts or to deny the Sixth Amendment right of criminal defendants to counsel of their choice. Generally, courts may, if they deem it necessary, require that local counsel be associated in some way with litigation in the local courts. *Cf.* Piorkowski v. Arabian American Oil Company, S.D.N.Y., 131 F. Supp. 553 (1955). However, as the District Judge below has commendably noted, if no local counsel are available, a court rule requiring local counsel should be waived. Moreover, where local counsel are associated in the case to comply with court rules, non-local counsel chosen by the parties may nevertheless take the lead in the direction and argument of the case. See United States v. Bergamo, 3 Cir., 154 F.2d 31 (1946).

Federal as well as state courts must be guided in this matter of local rules by the recent decisions of the Supreme Court concerning regulation of attorneys. The Court has said that "A State could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest." Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 84 S.Ct. 1113, 1117. This principle applies with special force where it is a federal court, and not a state, whose regulations may interfere with lawsuits authorized by Congress. And where, as here, the basic public interest involved is the protection of fundamental constitu-

tional rights of the petitioners, courts must give special heed to the teachings of the Supreme Court to permit neither indirect nor direct "means to bar them from resorting to the courts to vindicate their legal rights. The right to petition the courts cannot be so handicapped." *Id.*, 84 S.Ct. at p. 1117. And since this is a criminal case, the constitutional right of the accused to the assistance of counsel of his own choice reinforces this principle.

■ In the removal petition at hand, and in the class of cases likely to raise similar problems, "litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country." N.A.A.C.P. v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963). In this context where the litigation is not brought for private gain, any regulation of the practice of law must show sufficient "substantial regulatory interest," *id.*, 371 U.S. at 444, 83 S.Ct. 328, 9 L.Ed.2d 405, to justify the potential and actual inhibitory effects of the regulation on the constitutionally protected right to litigate. *Ibid.*

■ For these reasons, as we indicated in our earlier memorandum and as the District Judge below agrees, waiver of local rules, or admission to the bar *pro hac vice*, should be allowed when, as herein alleged, the non-local counsel "was unable to find counsel admitted [locally] who would sign the pleadings with him." The Supreme Court has recently taken judicial notice of a similar circumstance in a not unrelated proceeding:

> "* * * Lawsuits attacking racial discrimination, at least in Virginia, are neither very profitable nor very popular. They are not an object of general competition among Virginia lawyers; the problem is rather one of an apparent dearth of lawyers who are willing to undertake such litigation. * * *" N.A.A.C.P. v. Button, supra, 371 U.

S. at 443, 83 S.Ct. at 343, 9 L.Ed.2d 405.

Such a situation is unworthy of the proud tradition of the Southern bar. We are pleased to note that, after the filing of the above mentioned affidavit, the judges of the District Court were able to secure the names of members of the local bar available to associate themselves with the original counsel for the petitioners herein. It is commendable that the District Court helped secure for petitioners the assistance of counsel familiar with the local practice. Otherwise original counsel would have had to proceed alone. And it is commendable that gentlemen of the local bar have agreed to perform their duties as lawyers in rendering such service.

■ It thus appears that there is no reason why petitioners may not now file a removal petition or petitions for the criminal prosecutions here involved, without payment of fees or bond, and with the signatures of local counsel available. No formal order need issue, therefore, designating the District Judge as respondent on the petition for mandamus, as the District Judge's memorandum indicates that he will act upon an expression of our views. See Maryland v. Soper (No. 2), 270 U.S. 36, 44, 46 S.Ct. 192, 70 L.Ed. 459 (1926). For the reasons herein stated, we reserve decision on the question of invoking Rule 13a(b) of our rules, and retain jurisdiction until the matter is finally settled.

GRIFFIN B. BELL, Circuit Judge (concurring specially):

In concurring I do wish to add a word with respect to part one of the opinion having to do with several persons joining in a single petition under the removal statute.

The wisdom of requiring a separate petition for each defendant seeking removal is made manifest by the facts of this case. Many persons are involved. Each is charged separately in the state court. The facts as now developed before us without dispute indicate that Michael Lefton whose name appears in the style

of this case was released by juvenile authorities in Hattiesburg after having been taken into custody. He therefore is not a party seeking removal as he has never been charged in the state court. Moreover, his name is "Lofton".

It goes without saying that a separate petition on behalf of each person seeking removal would tend to effectuate a more orderly procedure in the District Court, and this is all the more true in this day of mass arrests. This requirement should, of course, be balanced against the onerous task of preparing multiple petitions, but this, as Judge Wright leaves it, is procedural and something best left to the discretion of the District Court.

In essence the ultimate concern in matters of the type involved in these removal proceedings is to determine the truth of the allegations with respect to deprivation of constitutional rights. The removal statute may not be used to thwart local law enforcement. The duty first falls on the state courts and state officers to accord and protect constitutional rights. Art. 6, Cls. 2 and 3, U.S. Const. It is failure or abdication there which gives rise to the proceeding in the federal court.