**State of NEW YORK,**

v.

**Jude TANELLA, Defendant.**

**No. 02 CR 1343(NGG).**

United States District Court, E.D. New York.

Jan. 13, 2003.

Adam S. Hoffinger, Piper Rudnick LLP, Washington, DC, Lawrence A. Berger, Mahon & Berger, Esqs., Garden City, NY, Robert A. Salerno, Esq., Piper Rudnick LLP, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

By Notice of Removal[1] filed in this court, defendant Jude Tanella seeks to remove, pursuant to 28 U.S.C. § 1442(a)(1), a homicide prosecution pending against him in New York state court. The State of New York ("State") opposes removal on various grounds.[2] For the following reasons, the petition for removal is GRANTED.

## I. FACTS

The following facts, which are generally undisputed, are taken from defendant's submissions in support of removal.[3] De-

1. Defendant's original attorney filed a Notice of Removal ("Notice") and a Supplement to the Notice of Removal ("Supp.Notice"). His new attorney filed an additional submission at his first appearance before the court. I have considered all of these materials.

2. The State of New York, through the Kings County District Attorney, filed an Affidavit and Memorandum of Law in Opposition to Removal ("Opp.Memo") and a Supplemental Memorandum of Law in response to the submission of Defendant's new counsel. I have considered both of these as well.

3. I note that none of defendant's submissions thus far includes an affidavit or other statement from the defendant himself. The Sup-

plement to the Notice of Removal, which contains the statement of facts, and includes statements attributed to defendant, is signed by defendant's attorney, who presumably has no first-hand knowledge of the facts.

Since the State has not challenged the accuracy of the facts, except where indicated, and since, under Fed.R.Civ.P. 11(b)(3), defendant's attorney has represented that "the factual contentions have evidentiary support", the submissions before the court are sufficient for me to decide the question of removal. Going forward, however, I encourage counsel for both sides to consider whether additional submissions ought to contain, to the extent relevant, statements by persons with first-

fendant Jude Tanella ("Tanella") is a Special Agent Criminal Investigator with the Drug Enforcement Administration ("DEA") of the Department of Justice. (Notice, at 1). On May 1, 2002, Tanella was assigned to a DEA Division Group, which was participating in a joint operation with the New York City Police Department. (Supp. Notice, at 2; Opp. Memo, at 1). Part of the operation entailed conducting surveillance of Egbert Dewgard ("Dewgard"), who was suspected of involvement in "commerce in illegal drugs." (Supp. Notice, at 2). During the surveillance, Dewgard was observed driving a car to an apartment building, from which another male exited and handed Dewgard a black plastic bag, which was later found to contain illegal narcotics. (*Id.*). The other male sat in the car with Dewgard for a few minutes, then left, and Dewgard started to drive away. Other DEA agents were instructed to stop the car and began to pursue Dewgard's car. At one point, Dewgard used his vehicle to strike one of the vehicles pursuing him in order to elude officers trying to stop him.

Tanella also joined the chase, and activated his police lights and siren. At some point during the chase, Tanella's vehicle became the only vehicle chasing Dewgard's vehicle. (*Id.* at 2–3). Dewgard's vehicle eventually struck a pole and became wedged between the pole and a fence. Tanella then observed Dewgard exit his vehicle and begin running away from it with the black plastic bag. (*Id.* at 3). Tanella chased Dewgard with his weapon drawn while shouting that he was the police and instructing Dewgard to stop. Ta-

nella caught up with Dewgard and jumped on top of him. (*Id.*). "A close quarter physical struggle ensued," with Dewgard allegedly striking Tanella and resisting Tanella's efforts to subdue him. (*Id.*). During the struggle, Tanella alleges that Dewagard "lock[ed] his eyes on [Tanella's] weapon ... [and] lunged for [it]." (*Id.* at 4). At that point, Tanella states that he "reasonably believed that the actions of Mr. Dewgard posed an imminent threat of death or seriously [sic] bodily injury to [himself] and he discharged one round from his weapon into Mr. Dewgard in order to stop the threat." [4] (*Id.*).

The Kings County District Attorney presented the case to a grand jury, which returned an indictment charging Tanella with Manslaughter in the First Degree, a class B felony.[5] Tanella was arraigned on November 1, 2002, and entered a plea of not guilty. On November 13, 2002, Tanella filed the instant Notice of Removal.

On December 5, 2002 the court held a status conference which was adjourned for one week to allow Tanella to obtain new counsel. At the December 12, 2002 conference/hearing, the court heard argument on the issue of removal and accepted additional briefing.

## II. DISCUSSION

This case presents the rare question of what circumstances entitle a federal officer indicted on a state homicide charge to remove that criminal prosecution to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[6] The stat-

hand knowledge. *See Kentucky v. Long,* 637 F.Supp. 1150, 1151 (W.D.Ky.1986).

**4.** The Memorandum in Opposition filed by the State appears to dispute the last part of Tanella's account; the State characterizes Dewgard as "a fleeing suspect." (Opp. Memo, at 5).

**5.** Under New York law, "A person is guilty of manslaughter in the first degree when ... [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20(1) (McKinney 1998).

**6.** The statute provides:

ute itself is broadly worded and clear in its directive. By its terms, a defendant may remove a civil or criminal case if that defendant is (1) a federal officer, and (2) was sued for conduct arising under color of office. *See* 28 U.S.C. § 1442(a)(1). In addition to these textual requirements, the Supreme Court has also required defendants to allege a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

There is no disagreement that Tanella, an agent with the DEA, unquestionably a federal law enforcement agency, is a federal officer within the meaning of the statute. Likewise, the State "do[es] not dispute that [Tanella] is being prosecuted for an act that was performed under color of office." (Opp. Memo, at 2). The State contends, however, that Tanella has failed to raise a colorable federal defense that is also unavailable under state law. This ar-

gument fails for two reasons. First, a federal officer is not required to raise a colorable federal defense that is exclusively federal in nature. Second, in this case, in addition to the common law justification of self-defense, Tanella has also raised federal immunity under the Supremacy Clause. For these reasons, removal of this case is proper.

### A. Removal Procedure

Removal of criminal cases from state court is governed by 28 U.S.C. § 1446(c). Unlike civil actions, removal of a criminal prosecution does not automatically divest the state court of jurisdiction, "except that a judgment of conviction shall not be entered [by the state court] unless the prosecution is first remanded."[7] 28 U.S.C. § 1446(c)(3). When presented with a timely notice of removal,[8] the federal court

---

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
28 U.S.C. § 1442(a)(1).

7. Counsel for defendant argues that, despite the clear words of the statute, this case may not proceed in state court because Tanella has raised Supremacy Clause immunity, which bars altogether prosecution in state court. (*See* Transcript of Dec. 12, 2002 Hearing, at 21, 23). The apparent conflict between § 1446(c)(3) and the doctrine of federal immunity need not, as counsel urges, be resolved by holding that a state court is automatically divested of jurisdiction upon the filing of a notice of removal if the basis for removal is federal immunity.

Adopting counsel's view seriously undermines the "strong judicial policy against federal interference with state criminal proceedings." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *see also Arizona v. Manypenny*, 451 U.S. 232, 243, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (stating that "the regulation of crime is preeminently a matter for the States"). Likewise, the Supreme Court has instructed that it is "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *See Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Finally, it does not appear, as counsel suggests, that § 1446(c)(3) and federal immunity are mutually exclusive. For example, if the state court proceedings were to move rapidly, conceivably defendant could raise his federal defense in that forum, under N.Y. Criminal Procedure Law § 210.20, before I decide the issue of removal. As there is no danger of simultaneous proceedings, however, this discussion is merely academic.

8. A notice of removal must be filed no later than thirty days after arraignment. *See* 28 U.S.C. § 1446(c)(1). The filing in this case was timely.

"shall examine the notice promptly," and summarily remand the case if it "clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted." 28 U.S.C. § 1446(c)(4). The court reviewed Tanella's Notice and the Supplementary Notice and determined that summary remand was not warranted.

Following its initial review of the removal notice, the court is directed to "order an evidentiary hearing to be held promptly" to determine whether "removal shall be permitted." Here, both the State and defendant agree that no evidentiary hearing is necessary because there is no disagreement about the facts relevant to the court's determination of the removal issue. (*See* Transcript of Dec. 12, 2002 Hearing, at 3, 6, 19–20). Although the State disputes defendant's legal basis for removal, it has not taken issue with any of the material facts alleged in defendant's Notice of Removal. As the Supreme Court has stated, "if the plaintiff does not take issue with what is stated in the petition [for removal], he must be taken as assenting to its truth, and the petitioning defendant need not produce any proof to sustain it." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *see also Kentucky v. Long*, 837 F.2d 727, 729–30 (6th Cir.1988) (noting that the district court granted removal without an evidentiary hearing where both parties agreed to the relevant facts); *cf. In re Donovan*, 601 F.Supp. 574, 576 (S.D.N.Y.1985) (conducting an evidentiary hearing where the state contested petitioner's allegations of fact). Accordingly, an evidentiary hearing is unnecessary and would be a waste of judicial resources as nothing new and relevant would be added beyond the facts already in the record before the court.[9]

## B. Law of Removal

As noted above, in order to remove a criminal prosecution the defendant must comply with the requirements of 28 U.S.C. § 1442(a)(1), as interpreted by the Supreme Court. The defendant has to demonstrate (1) that he was an "officer (or any person acting under that officer) of the United States"; (2) that he is sued "for any act under color of such office"; and (3) that he can raise a colorable federal defense. 28 U.S.C. § 1442(a)(1); *Mesa*, 489 U.S. at 129, 109 S.Ct. 959. The parties do not dispute that the first two requirements have been met. The State argues, however, that removal is not warranted because the requirement of a colorable federal defense must be that the federal defense be different from or unavailable under state law. The State also argues that the purpose of the removal statute would not be served by allowing removal in this case.

It is well-established that federal question jurisdiction "must be determined by reference to the well-pleaded complaint. A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (internal cita-

---

**9.** The defense attempts to bolster its position regarding the effect of § 1446(c)(3), *see* note 7 *supra*, by arguing that dispensing with the hearing provision of the statute, despite its language, likewise permits me to depart from the express language of § 1446(c)(3).

This analogy is faulty and in no way undercuts my view of § 1446(c)(3). While there is case law holding that no evidentiary hearing is required when there are no factual disputes between the parties, no similar authority exists for the proposition advanced by the defense in the context of § 1446(c)(3). Likewise, dispensing with the evidentiary hearing despite the language of the statute does not compromise the strong policy against interfering with state criminal proceedings as would adopting counsel's position on § 1446(c)(3).

tion and quotation marks omitted). The federal officer removal statute, however, "serves to overcome the 'well-pleaded complaint' rule" by allowing "the raising of a federal question in the officer's removal petition [to] constitute the federal law under which the action against the federal officer arises for Art. III purposes." *Mesa*, 489 U.S. at 136, 109 S.Ct. 959. Thus, if a federal officer is sued in state court for any act under color of office and raises a colorable federal defense, "the right of removal under § 1442(a)(1) is made absolute." *Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see also Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (noting that the Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office").

It is important to remember that at this stage in the proceedings, the federal officer need not prove or prevail on his defense; he needs merely to raise it. *See Willingham*, 395 U.S. at 407, 89 S.Ct. 1813 ("The officer need not win his case before he can have it removed."). The Supreme Court has held that § 1442(a)(1) reflects a congressional determination that "federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* Thus, removal must be allowed "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Manypenny*, 451 U.S. at 241, 101 S.Ct. 1657. It is for these reasons that the State's arguments against removal must be rejected.

## C. Defendant Has Raised a Colorable Federal Defense

In his Notice of Removal, Tanella raises two potential defenses, either of which would entitle him to remove this prosecution to federal court. First, Tanella raises the common law justification of self-defense in that "the death of Mr. Dewgard . . . was caused by [defendant] in performance of the express requirements of federal law . . . and in defense of his own life." (Notice, at 1–2). More importantly, defendant asserts that he is immune from prosecution under the Supremacy Clause of the Constitution for acts that he reasonably believed were necessary and proper in the performance of his duties, *see* U.S. Const. art. VI, cl. 2. (Notice, at 2).

### 1. Self-Defense

■ Self-defense is a common law justification that absolves one of an intentional homicide when such homicide was committed under the reasonable belief that imminent death or serious bodily injury was about to occur. *See, e.g., Brown v. United States*, 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961 (1921) (Holmes, J.) (stating that "if a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not succeeded the bounds of lawful self defence [sic]"); *Beard v. United States*, 158 U.S. 550, 562, 15 S.Ct. 962, 39 L.Ed. 1086 (1895) (stating that "when a person, being without fault, and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable"). There are, of course, additional factors that are considered depending on the specific circumstances of a case where self-defense is at issue. *See generally* 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.7 (1986).

Tanella alleges that Dewgard was "offering unlawful resistance to apprehen-

sion" (Notice, at 2), and lunged for his weapon (Supp. Notice, at 4). At that point, Tanella "reasonably believed that the actions of Mr. Dewgard posed an imminent threat of death or serious[ ] bodily injury," so that Tanella was forced to shoot Dewgard in order to stop the perceived threat. (*Id.*).

The State argues that defendant has not raised a colorable federal defense because his "federal defense is, at best, identical to an available defense under state law." (Opp. Memo, at 3). Under New York law, a person may "use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person." N.Y. Penal Law § 35.15(1) (McKinney 1998). The statute permits the use of deadly force in response to the threatened imminent use of deadly force. *See* N.Y. Penal Law § 35.15(2). New York also has a separate justification provision concerning the use of physical force in making an arrest, which applies to agents of the DEA, such as Tanella. *See* N.Y. Penal Law § 35.30; N.Y.Crim. Proc. Law §§ 2.15(5), 2.20(1)(b).· Thus, according to the State, given this statutory framework the "requirement that a defendant advance a colorable federal defense must mean that the federal defense be one that is unavailable under state law." (Opp. Memo, at 6). The State's argument is erroneous for two reasons.

First, there is nothing in the language of § 1442(a)(1), nor in the decisions interpreting it, that requires the federal defense to be exclusively federal or unavailable under state law. The State, therefore, seeks to graft an additional requirement onto the statute. In support of this position, the State points out that the requirement of a colorable federal defense is also absent from the text of the statute, but was added by the Supreme Court in *Mesa*. In that case, however, the Supreme Court merely reaffirmed and stated explicitly that the colorable federal defense requirement had always been part of the removal statute. *See Mesa*, 489 U.S. at 129, 109 S.Ct. 959 ("Although we have not always spoken with the same clarity that these early decisions evince, we have not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense.").

Second, the allegation of self-defense by a federal officer who is performing his duty implicates federal law and "provide[s] the necessary predicate for removal." *Mesa*, 489 U.S. at 127, 109 S.Ct. 959. As the Supreme Court recognized, whether a federal officer's actions may be deemed to constitute self-defense depends on the federal law regulating that officer's conduct. *See id.* It is only because Tanella was acting pursuant to federal law that he was in a position to shoot Dewgard. Likewise, Dewgard's alleged resistance was unlawful because it was contrary to federal law. *See id.; see also Maryland v. Soper (No. 2)*, 270 U.S. 36, 42, 46 S.Ct. 192, 70 L.Ed. 459 (1926) (holding that "removals of prosecutions on account of acts done in enforcement of [federal] laws or under color of them properly include those for acts committed by a federal officer in defense of his life, threatened while enforcing or attempting to enforce the law. Such acts of defense are really part of the exercise of his official authority. They are necessary to make the enforcement effective"); *Tennessee v. Davis*, 100 U.S. 257, 260, 25 L.Ed. 648 (1879) (holding that removal by a federal officer was proper where "at the time when the alleged act for which he was indicted was committed he was, and still is, an officer of the United States ... and that the act for which he was indicted was performed in his own necessary self-de-

fence [sic] while engaged in the discharge of his duties").

## 2. *Supremacy Clause Immunity*

■ In addition to alleging that he acted in self-defense, Tanella claims that his actions were "necessary and proper to perform his duties and [he] had no motive other than to do his duties." (Notice, at 2). Pursuant to the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, and *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), were defendant to prove that he reasonably believed that his actions were necessary and proper in the performance of his duties, he would be completely immune from all criminal liability. This is an extension of the principle that "the government of the United States in the exercise of all the powers conferred upon it by the constitution" is supreme to the states. *In re Neagle*, 135 U.S. at 62, 10 S.Ct. 658. Accordingly, it is well-established that if a federal officer

> is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do ... and if in doing that act he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of [any] State.... There is no occasion for any further trial in the state court, or in any court.

*Id.* at 75, 10 S.Ct. 658; *see also Whitehead v. Senkowski*, 943 F.2d 230, 233–34 (2d Cir.1991) (recognizing that under proper circumstances the Supremacy Clause provides immunity to a federal official from state criminal laws); *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir.1988) (same); *Clifton v. Cox*, 549 F.2d 722, 730 (9th Cir.1977) (same).

While both self-defense and federal immunity require an inquiry into the reasonableness of Tanella's actions, self-defense is an issue to be decided at trial, whereas immunity, if proven, requires dismissal of the indictment and bars the prosecution altogether. For purposes of removal, however, Tanella must only *raise* either of these defenses. At this point in the proceedings, I make no finding whatsoever as to the merits of either defense.

■ The State argues that because the "precise scope of this defense [immunity] is unclear," removal should not be permitted. (Opp. Memo, at 5). That argument, however, militates strongly *in favor* of removal, because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." [10] *Willingham*, 395 U.S. at 407, 89 S.Ct. 1813; *see also Manypenny*, 451 U.S. at 241–42, 101 S.Ct. 1657 ("Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties.... It also enables the defendant to have the validity of his immunity defense adjudicated in a federal forum."). Thus, considering the congressional purpose in permitting removal, the Supreme Court's expansive view of the statute, and with due regard for federal-state relations, Tanella's allegations amply support removal of this state prosecution to federal court.

## D. Conclusion

For the foregoing reasons, this case is hereby removed from the Supreme Court of New York, Kings County. Pursuant to 28 U.S.C. § 1446(c)(5), the Clerk of the

---

**10.** The State's contention that the purpose of the removal statute would not be served by allowing removal in this case fails for the same reasons. (*See* Opp. Memo, at 6–8).

Court is directed to so notify the clerk of the Supreme Court, Kings County.

SO ORDERED.