James E. SANDERS, Petitioner,

v.

Honorable Dan M. RUSSELL, Judge, United States District Court for the Southern District of Mississippi, Respondent.

Joan ANDERSON et al., Petitioners,

v.

Honorable William Harold COX, Judge, United States District Court for the Southern District of Mississippi, Respondent.

Nos. 25797, 25815.

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1968.

Jonathan Shapiro, Jackson, Miss., John H. Schafer, Washington, D. C., for James E. Sanders.

R. L. Goza, Canton, Miss., William A. Allain, Jackson, Miss., John C. Satterfield, Yazoo City, Miss., for Judge Dan M. Russell.

Melvyn Zarr, Jack Greenberg, New York City, Anthony G. Amsterdam, Philadelphia, Pa., Paul Brest and Marian E. Wright, Jackson, Miss., William T. Coleman, Jr., Philadelphia, Pa., for Joan Anderson and others.

John C. Satterfield, Yazoo City, Miss., for Judge William Harold Cox.

Erskine W. Wells, Jackson Miss., for intervenor Miss. State Bar.

Stephen J. Pollak, Asst. Atty. Gen., Lolis E. Elie, Atty., Dept. of Justice, Washington, D. C., amicus curiæ.

Before JOHN R. BROWN, Chief Judge, DYER, Circuit Judge, and GARZA, District Judge.

DYER, Circuit Judge:

We are called upon in these mandamus proceedings to determine the validity of the rule of the United States District Court for the Southern District of Mississippi limiting the *pro hac vice* appearance of out of state attorneys as applied in non-fee generating civil rights cases. That rule, which was promulgated on September 26, 1967,[1] imposes three limitations upon such appearances:

(1) A *pro hac vice* appearance by an attorney is permitted only if he is a non-resident of the State of Mississippi;

(2) A *pro hac vice* appearance by an attorney is permitted in only one case in any twelve month period and;

---

1. Prior to September 26, 1967, *pro hac vice* admission to the District Court merely required that a member of the bar of that court move the admission of a non-resident attorney. "Rule Regulating Admission of Attorneys," July 10, 1962.

(3) A *pro hac vice* appearance by an attorney can be made only if he has been admitted to a state bar for at least five years, unless the federal district court of his home state admits Mississippi attorneys under a more lenient rule, in which event the more lenient rule applies.[2]

The Rule as to Nonresident Attorneys was applied to refuse admission *pro hac vice* in the District Court to Lawrence Aschenbrenner, an attorney employed full time by the Lawyers' Committee for Civil Rights Under Law, in a damage suit under 42 U.S.C.A. § 1983, because he had already appeared in one other case in the District Court within the preceding twelve months. Jonathan Shapiro, another Lawyers' Committee Attorney, was also prevented, by application of the Rule, from appearing *pro hac vice* in a similar suit, and Paul and Iris Brest, attorneys employed by the NAACP Legal Defense and Educational Fund

were prevented from appearing *pro hac vice* in seven school desegregation suits. The applications of the latter three attorneys were denied because they were not "nonresident attorneys." The Rule, as interpreted by the respondent Judges and by the Jackson Division Attorneys' Comity Committee,[3] makes the *pro hac vice* privilege unavailable to attorneys temporarily residing in Mississippi, and those three attorneys had been residing in Mississippi for limited periods while working for their respective civil rights organizations.

■ At the outset the respondents assert that this Court has no jurisdiction to entertain the petitions for mandamus because we have no supervisory power to question rules promulgated by a District Court, not inconsistent with, and adopted under authority of statute and the rules of the United States Supreme Court,[4]

## 2. RULE AS TO NONRESIDENT ATTORNEYS

1. Any attorney admitted to practice in a state other than Mississippi and not qualified to practice in the courts of Mississippi may be permitted by this Court be comity to appear and participate in the particular case, when introduced to the Court with such recommendation by an attorney in good standing at the bar of this Court; but, no nonresident attorney shall be thus admitted by comity to appear in more than one case in any calendar year, or within the space of twelve months; and no such attorney shall be thus permitted to appear in any case under this rule unless such attorney has been admitted to practice for at least five years before the Court of the state from which he or she comes, unless it be shown to this Court that the federal court of such state from which the attorney comes admits attorneys from Mississippi to practice by comity under a more favorable or relaxed rule, in which event such more relaxed rule will be applied by this Court.

\* \* \* \* \*

3. No person not admitted to the bar of this Court, or expressly authorized by order of the Court to appear before the Court in any case shall participate in any manner or to any extent in any discovery proceeding for or as an attorney (or present any matter to the Court for an order); or affix his name or permit his

name to be affixed to any motion or pleading in any case in this Court as attorney for any litigant; and any infraction or violation of this rule or any part thereof will be treated and considered by the Court as a direct contempt in the presence of the Court and summarily punished accordingly.

3. On October 2, 1967, the District Court entered an order appointing an Attorneys' Committee for the Jackson Division to process applications of nonresident attorneys and to make findings and recommendations thereon.

4. Respondents cite no case law in support of their argument and seemingly rely on the text of the rules themsleves: 28 U.S. C.A. § 2071, "The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Act of Congress and rules of practice and procedure prescribed by the Supreme Court."

28 U.S.C.A. § 2072, "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the

and in any event mandamus is not the proper remedy. These arguments are patently without merit. If, and as we later make clear there is no if, the Rule is not "consistent with Acts of Congress" because it has the effect of precluding nonresident attorneys from appearing in civil rights cases under the circumstances here shown, there is no doubt of our supervisory power by the grant of a writ of mandamus to prohibit the District Court from enforcing its rule. As the Supreme Court said in La Buy v. Howes Leather Co., 1957, 352 U.S. 249, 259–260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290: "We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here." While sounding the usual caveat that mandamus is an extraordinary remedy to be used under exceptional circumstances lest it become a substitute for an appeal or interlocutory appeal, we echoed in In re Watkins, 5 Cir. 1959, 271 F.2d 771, 76 A.L.R.2d 1113, what had been said in *La Buy* and granted the writ, finding that the "procedure (of referring the case to a special master) nullifies the right to an effective trial before a constitutional court." Id. at 775. Finally, in considering the requirement of a local rule providing *inter alia* for the signature by a member of the bar of the Southern District of Mississippi on a removal petition under the Civil Rights Act, we said in a mandamus proceeding that "such rules

may not be allowed to operate in such a way as to abridge the right of any class of litigants to use the federal courts or to deny the Sixth Amendment right of criminal defendants to counsel of their own choice." Lefton v. City of Hattiesburg, 5 Cir. 1964, 333 F.2d 280, 285; see also Alexander v. Cox, 5 Cir. 1965, 348 F.2d 894.

Substantial allegations were made in the petitions that the Rule affected fundamental rights and that its adoption was beyond the authority of the District Court. We do not doubt our power to grant the writ, nor that sound discretion dictates that the writ be granted.

■ Turning to the Rule itself, the issue is a narrow one. A summary of what is and what is not involved in this case will put the question before us in better focus. The petitioners' position is simply that they have a federal right to retain counsel of their choice who are attorneys in good standing at their respective bars and are associated with locally-admitted counsel in non-fee generating school desegregation and civil rights cases in federal court.[5] This case does not involve the right of *non lawyers* to practice law. This case does not involve the right to practice in *state courts*. This case does not involve the right to *general admission* to a federal district court. This case does not involve the right of attorneys to be admitted *pro hac vice without association* with locally admitted counsel. This case does not involve *fee-generating* cases. This case *does* involve the need for free legal services in civil rights cases. Out of twenty-

---

United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers."

Rule 83, ·Fed.R.Civ.P., "Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may reg-

ulate their practice in any manner not inconsistent with these rules."

5. The limitation to non-fee generating cases does not preclude petitioners from seeking attorney fees in appropriate cases. The award of attorney's fees pursuant to Titles II and VII of the 1964 Civil Rights Act, 42 U.S.C.A. §§ 2000a-3(b), 2000e-5(k); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (U.S. March 18, 1968) is not in conflict with a policy of refusing to accept fees from clients.

two hundred lawyers in Mississippi, only twelve are negroes. Of course, all twelve are not always available. This is obviously an inadequate reservoir. Moreover, there is ample evidence in the record to demonstrate the burdens of counsel handling such cases, see Note, Attorneys: Interstate and Federal Practice, 80 Harv.L.Rev. 1711, 1722 (1967), as well as the petitioners' inability to obtain representation, which, parenthetically, is borne out by literally hundreds of civil rights cases that have come to us in which out of state lawyers have had the laboring oar. It is no overstatement that in Mississippi and the South generally negroes with civil rights claims or defenses have often found securing representation difficult. Lefton v. City of Hattiesburg, supra. As the Supreme Court pointed out in N.A.A.C.P. v. Button, 371 U.S. 415, 443, 83 S.Ct. 328, 343, 9 L.Ed.2d 405,

> Lawsuits attacking racial discrimination, at least in Virginia, are neither very profitable nor very popular. They are not an object of general competition among Virginia lawyers; the problem is rather one of an apparent dearth of lawyers who are willing to undertake such litigation.

(Footnote omitted.)

On the showing made in this case the civil rights climate in Mississippi is not unlike that of Virginia. Furthermore, in damage cases brought by negro plaintiffs against white defendants, the slight chance of contingent fee recovery does not suggest that economic benefits are or will be such as to outweigh, for appreciable numbers of Mississippi lawyers, their reluctance to become identified with the negro civil rights effort. Under these circumstances it is imperative that a local rule not be applied in such a way as to abridge the right of civil rights litigants to use the federal court.

■ As we said *in limine,* the district courts have broad discretion in prescribing requirements for admission to practice before them in most cases, 28 U.S.C.A. § 1654, but their rules must "be consistent with Acts of Congress," 28 U.S.C.A. § 2071.

In civil rights cases, however, Congress has directed the federal courts to use that combination of federal law, common law, and state law as will be best "adapted to the object" of the civil rights laws. Rev.Stat. § 722 (1875), applying to Title XIII, Rev.Stat.; 42 U.S.C. § 1988; see 28 U.S.C. § 1443, formerly Rev.Stat. § 641 (1875); 42 U.S.C.A. § 1988 note. Therefore, a federal court is required to use common law powers to facilitate, and not to hinder,

"[p]roceedings in vindication of civil rights." 42 U.S.C. § 1988.

Lefton v. City of Hattiesburg, supra, 333 F.2d at 284; accord, Brown v. City of Meridian, 5 Cir. 1966, 356 F.2d 602, 605. The Rule as here applied clearly contravenes the Congressional intent as embodied in the civil rights acts.

■■ We recognize that the District Court has a valid interest in regulating the qualifications and conduct of counsel, their availability for service of court papers, and their amenability to disciplinary proceedings. See Note, Constitutional Right to Engage An Out-of-State Attorney, 19 Stan.L.Rev. 856, 866 (1967). But the assertion of the District Court's regulatory interest cannot justify a rule that limits the number of *pro hac vice* appearances, whether it be to one case a year or three cases a year. The respondents correctly state that the rules of the trial court must be "designed to preserve and protect decorum and the dignity of an honored profession." [6] It is difficult

6. Respondent's Response, p. 17, in Anderson v. Cox. We have been unable to find a scintilla of evidence in the entire record which would lead to an inference that there had been or will be any diminishment of decorum or dignity because of the *pro hac vice* admission of petitioners.

to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation.

Nor can we find any valid basis for denying the privilege of *pro hac vice* appearances in civil rights litigation to out-of-state attorneys who reside in the state on a temporary basis. This is particularly true here where the residence requirement of the state bar is such as to prevent them from qualifying for admission to the bar of the District Court for a long period of time.

No reason has been suggested and we know of none why admission for five years should be a pre-requisite for a *pro hac vice* appearance in civil rights cases. This provision has no parallel in the rules of other courts, it does not require *practice* but only *admission* for five years, and it is not required for general admission to the bar of the Southern District of Mississippi. Rule 1, Rule Regulating Admission of Attorneys, July 10, 1962. It thus cannot be said to serve the purpose of insuring a certain level of competence in representation.

Finally, the provision for a "more favorable or relaxed rule" to be applied by "comity" by the District Court really has no pertinency at all. Any rule, whatever its source, that unnecessarily restricts a litigant's choice of counsel in civil rights litigation cannot be sustained.

■ Apart from the Rule (the rule does not attempt to prohibit *pro hac vice* admission simply because the court may determine that certain lawyer's participation in a given case is unnecessary), lack of necessity—in the judge's view—simply is not and cannot be a proper basis for exclusion in these cases. The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.

Amicus Curiæ, the Mississippi State Bar, arguing in support of the Rule, points out that it has a vital interest in the ethical conduct of lawyers and the disciplinary action to be taken in the event of misconduct.[7] The State has basically three interests that need to be given consideration. The interest in maintaining high levels of professional ethics, the financial or economic interests of the members of the Mississippi bar, and the interest in assuring a high quality of representation.

■ We can envisage no difficulty in maintaining standards of professional ethics. The *pro hac vice* admission is to the federal not state court. The federal court is free to and should take measures against unethical conduct if and when it occurs in connection with any proceeding pending before it. Necessary sanctions may be imposed not only directly, but through the bar of which the *pro hac vice* lawyer is a member, as well as through the local lawyer with whom he is associated. Non-resident lawyers who stay for any significant period of time, as has been the pattern with those employed by the various civil rights organizations, and who do not confine their practice within the limits prescribed by their *pro hac vice* admission are subject to appropriate action by the State of Mississippi for unauthorized practice of law. Miss.Code Ann. § 8682 (1942).

■ The financial or economic interest of the members of the Mississippi bar are not substantially affected. True, the local bar association will not receive dues paying support, but the federal courts cannot be used to serve such a local interest. And since we are here concerned with free legal services in the representation of civil rights litigants, this is not "a commercialization of the legal profession which might threaten the moral and ethical fabric of the administration of justice." Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State

---

7. There is no suggestion in the record or briefs—indeed none could have been made —that the integrity of any of the lawyers involved in this litigation is in question.

Bar, 1963, 377 U.S. 1, 6, 84 S.Ct. 1113, 1117, 12 L.Ed.2d 89.

Finally, quality representation by a non-resident attorney in civil rights cases is to be expected. His admission to a state bar is a basic determinant both of the attorney's professional qualification and good moral character because the state bar is the standard-setting body that initially investigates and actively takes steps to insure that the canons of professional ethics are observed. This is borne out by the fact that in most federal district courts in the United States, including the Southern District of Mississippi, membership in the state bar is sufficient qualification for general admission to the district court bar. Association with a local lawyer gives the non-resident lawyer a source of knowledge about local rules and procedures and their proper application to the case at hand. Moreover, in the context of civil rights litigation, an out-of-state lawyer frequently develops an expertise because of his specialization in this field.

In sum, bearing in mind what we have said about what this case does and does not involve, we are unable to perceive how the regulatory powers of either the District Court or the Mississippi State Bar over professional conduct can be or are affected.[8]

■■■ In these non-fee generating civil rights cases it is clear that only reasonable limits can be placed on a federal litigant's choice of counsel, and we find that the limits here established by the "Rule as to Nonresident Attorneys"

are not reasonable. In our view the District Court must grant *pro hac vice* admissions in such cases upon a showing that an individual lawyer is a member in good standing of the bar of some state, without limitation in terms of years of practice or admission. The District Court may not limit the number of appearances that the lawyer can make in such cases. This is not to say or even intimate that the District Court's control over its docket, pretrial procedures and trials is to be in anywise diminished. It is the responsibility of the District Court to keep its dockets current by the expeditious disposition of pretrial motions, hearings and the trial of cases. This cannot be accomplished when, as so often happens in this district, different counsel appear at various stages of the proceedings, with little or no knowledge of what has theretofore transpired in the case. Delays resulting from such unpreparedness necessarily encroach upon valuable judicial time.[9] Reasonable conditions may be imposed to insure that the same counsel will continue in the case until it is concluded to insure against delays and other administrative inefficiencies that are inherent in the rotation of counsel and to avoid the necessity of continuances because of substitution of counsel. The District Court may refuse to admit a lawyer, otherwise qualified, on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer admitted gener-

---

8. Since we are not here concerned with the right of non-lawyers to practice law, the State Bar's reliance upon Hackin v. Arizona et al., 1967, 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347; Darby v. Mississippi State Board of Bar Admissions, Miss.1966, 185 So.2d 684 is misplaced. Likewise the right to practice in the state courts is not involved. See Theard v. United States, 1957, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342. General admission to the District Court is not in issue, thus the State Bar's insistence upon Application of Wasserman, 9 Cir., 1956, 240 F.2d 213 is unavailing. Our interpre-

tation of Spanos v. Skouras Theatres Corp., 2 Cir., 1966, 364 F.2d 161 is more favorable to the petitioners than to respondent and we find Martin v. Walton, 1961, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5, readily disinguishable on the facts.

9. This problem is acute and recurring. As many as four or more lawyers have initially signed pleadings and then in a rotating fashion have appeared at successive hearings. Not infrequently new counsel have been substituted for one or more of those initially appearing.

ally to the bar of the court. See In re Ruffalo, 1968, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117. The privilege of *pro hac vice* appearance in such cases is available to a lawyer whether he comes in to the district on the day of appearance or whether he resides in the state on a non-permanent basis, so long as local counsel, generally admitted to the District Court's Bar, is associated. Such association satisfies the reasonable interest of the District Court in having a member of its Bar, who is subject to the court's general control, be professionally responsible for the litigation and who can be served with papers, can be notified of hearings and can be held accountable if anything reflecting on the Court or an abuse of its process occurs during the course of the litigation. In this role there is no need for active participation in the conduct of the litigation by associated counsel.[10]

The District Court's Rule as to Nonresident Attorneys is invalid.

Writs Granted.

---

10. After this case was orally argued the District Court, on June 12, 1968, promulgated another rule requiring, inter alia, that *"every lawyer who signs or permits*

*his name to be listed as counsel,* for either party in any case shall appear in person in that case, unless such counsel (and each counsel who appears) is re-

---

leased by an order of this Court entered on notice to the client, or approved by the client." We think this rule is overly broad and thus invalid as applied to non-fee generating civil rights cases. We presume that it was promulgated by the District Court to eliminate the problem

of successive counsel appearing at different stages in the proceedings. If so, it can no doubt be re-cast in the light of what we have heretofore said.