**Meregilda MATEO, et al., Plaintiffs,**

v.

**EMPIRE GAS COMPANY, INC., et al., Defendants.**

**Civil No. 11–1285 (SEC).**

United States District Court, D. Puerto Rico.

Jan. 19, 2012.

Edgardo Rosario, Edgardo Rosario Law Office, Keith A. Graffam, Graffam & Biaggi, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court is *pro hac vice* attorneys Toby B. Fullmer and W. Douglas Matthews' show cause response (Docket #97), requesting this court not to set aside their *pro hac vice* admissions in the case at bar. After a comprehensive analysis of the meaning and purpose of this term, and because sanctioning Matthews and Fullmer's six active *pro hac vice* appearances in this District would turn the meaning of this Latin phrase on its head, the Court finds their frequent appearances far from occasional, thus amounting to regular practice of law in this jurisdiction. Hence, in order to continue practicing law before this court, Matthews and Fullmer shall apply for regular admission to the District Court of Puerto Rico.[1]

### Factual and Procedural Background

As a result of a tragic gas explosion, plaintiffs filed this diversity-tort suit on March 23, 2011. Docket #1. At the time the complaint was filed, plaintiffs, who reside in Connecticut, were represented by local counsel David Efron, from the Law

Offices of David Efron, P.C. *Id.* Immediately thereafter, out-of-state attorneys Matthews and Fullmer filed separate motions, requesting to appear *pro hac vice.* Dockets #4 & 5.[2] In their *pro hac vice* applications, Matthews and Fullmer stated that, during the past three years, they had previously appeared *pro hac vice* in only two cases in this District.[3] Because Matthews and Fullmer's two-case appearances raised no red flags, this court granted their applications on April 11, 2011. Docket #10.

On December 1, 2011, this court received an Order entered by Judge Francisco A. Besosa, denying ACE Insurance Company's ("Ace") motion to reconsider granting admission *pro hac vice* to Matthews and Fullmer in *Daisy Aguayo–Cuevas v. Puerto Rico Electric Power Authority*, Civil No. 11–1907, Docket #24. Ace argued that Matthews and Fullmer "[had] appeared in over a dozen cases in this [District], and hence should no longer qualify for admission *pro hac vice.*" *Id.,* Docket #15, p. 1. By like token, Ace contended, Matthews and Fullmer's fourteen *pro hac vice* appearances in this District amounted to regular practice of law, and were thus incompatible with the definition of *pro hac vice. Id.,* p. 2.

In denying Ace's petition, the one-paragraph order explained that Local Rule

---

1. Matthews and Fullmer are thus ordered to follow-up on their "intent" to apply for admission to the Bar of this District. Docket #97, p. 9.

2. Both attorneys are members of the Matthews & Fullmer Law Firm located in Houston, Texas, which specializes in personal injury law. Docket #97, p. 2. Matthews is admitted to practice before the following courts: Texas Supreme Court; the Federal District Courts for the Southern District of Texas; the Fifth Circuit Court of Appeals; the First Circuit Court of Appeals; and the U.S. Supreme Court. *Id.,* p. 3. Fullmer is admitted to practice in the following courts:

Supreme Court of Texas and Federal District Courts for the Southern District of Texas. *Id.,* p. 4.

3. To wit: Civ No. 10–1320 and Civ No. 10–1799. Dockets #4 & 5, pp. 2–3. The Local Rules in this District require *pro hac vice* applications to be presented to the Court in the form available.... D.P.R. Civ. R. 83A(f). In turn, the form requires applicants to list the cases in which they have appeared during the past three years. *See* Application and Order for Admission Pro Hac Vice (available at http://www.prd.uscourts.gov/CourtWeb/pdf/Pro—Hac—Vice—App—Order.pdf) (last accessed January 11, 2012).

83(A)(f) "[d]oes not limit *pro hac vice* appearances." *Id.,* Docket # 24, p. 1. The judge cautioned, however, that a court may deny admission *pro hac vice,* "[i]f it finds it unreasonable for an attorney to request *pro hac vice* admission repeatedly as a way to avoid admission to the bar of this Court...." *Id.* As indicated above, Judge Besosa forwarded a copy of his order and Ace's motion to the Chief Judge and other judges in this District for consideration. For the reasons set forth below, this court respectfully disagrees with such order.

Given that Judge Besosa denied Ace's motion before Matthews and Fullmer filed their oppositions, this court ordered Matthews and Fullmer (Docket # 94) to show cause as to why it should not revoke their admission *pro hac vice* in the instant case. In essence, the Order stated that their appearances in this District seemingly comprised the regular practice of law, casting doubt on the propriety of their *pro hac vice* status.[4]

Matthews and Fullmer timely responded. Docket # 97. They argue that (1) numerical limitations on *pro hac vice* appearances are improper, *id.,* p. 4; (2) they have not made frequent and numerous appearances before this District, *id.,* p. 8; and (3) "[t]here is no evidence or allegation

that [they] lack decorum or dignity, that they are incompetent, that they lack good character, that they are not amenable to service or that they are not amenable to discipline." *Id.,* p. 7. As indicated above, they nonetheless proclaim that they "intend" to apply for admission to the Bar of this District. *Id.,* p. 9.

### Standard of Review

28 U.S.C. § 2071 and Fed.R.Civ.P. 83 authorize federal courts to promulgate local rules of practice. *United States v. Hvass,* 355 U.S. 570, 575, 78 S.Ct. 501, 504, 2 L.Ed.2d 496 (1958).[5] Further, 28 U.S.C. § 1654 empowers each federal district to regulate the admissions of attorneys: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id.*; *see also In re Desilets,* 291 F.3d 925, 929 (6th Cir.2002) (finding that "[f]ederal courts have the right to control the membership of the federal bar"). As usual, such rules must "[b]e consistent with Acts of Congress...." 28 U.S.C. § 2071.

The requirements governing eligibility for admission to the bar of the District of Puerto Rico are in turn prescribed by Lo-

---

**4.** In pertinent part, the Order reads as follows:

It has come to this Court's attention that *pro hac vice* attorneys [Fullmer] and [Matthews], plaintiffs' lead counsel, might not qualify for this type of admission. This, in light of their frequent and numerous appearances before this District notwithstanding that they are not admitted to practice law in this jurisdiction.

Docket # 94 (citations omitted).

**5.** Section 2071 provides:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business.... Such rules shall be consistent

with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.

In pertinent part, Federal Rule of Civil Procedure 83(a)(1) provides:

[A] district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit....

cal Rule 83A: "Any attorney who is of good personal and professional character, and who is an active member in good standing of and eligible to practice before the bar of the highest court of a state . . . ." D.P.R. Civ. R. 83A(a). Approving a written examination "[a]s determined by the District Bar Examination Committee" is the standard vessel for gaining admission to this District. D.P.R. Civ. R. 83A(a)(1).[6]

Out-of-state attorneys not admitted to practice law in this District, however, may move for admission *pro hac vice* pursuant to certain requirements imposed by Local Rule 83A(f). Among other exigencies, they must (1) "attest that the movant is not currently suspended from practicing law before any court or jurisdiction"; (2) "designate a member of this Court as local counsel"; and (3) pay the appropriate fee. D.P.R. Civ. R. 83A(f).[7] Importantly, the rule provides that both the *pro hac vice* and local counsel "[s]hall sign all filings submitted to the Court". *Id.* And that

once a *pro hac vice* attorney has been admitted "[f]or purposes of a particular proceeding, the attorney shall be deemed to have conferred disciplinary jurisdiction upon this Court . . . ." *Id.*

■ Although courts commonly have permitted out-of-state lawyers to appear *pro hac vice*, such practice is guaranteed neither by statute nor by the Constitution. *See e.g., Leis v. Flynt,* 439 U.S. 438, 443, 99 S.Ct. 698, 701 58 L.Ed.2d 717 (1979) (per curiam) ("The Constitution does not require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another."), *reh'g denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979).[8]

■ The Supreme Court has observed, approvingly, that " 'in many District Courts, the decision on whether to grant *pro hac vice* status to an out-of-state attorney is purely discretionary.' " *Roma*

---

**6.** There are, however, the following exceptions for attorneys who have

(2) [s]erved, for a period of one year, as a District Judge, Magistrate Judge, Clerk, Chief Deputy Clerk, Law Clerk, United States Attorney, or Assistant United States Attorney, Federal Public Defender or Assistant Federal Public Defender, in this Court; or,

(3) [s]erved, for a period of five (5) years, as a Supreme Court Justice, a Court of Appeals Judge, or a Judge of the Court of First Instance in the General Court of Justice of the Commonwealth of Puerto Rico; or,

(4) [s]erved on a continuous basis for at least ten (10) years as a full-time tenured law professor at a law school duly accredited by the American Bar Association and any other pertinent authority, provided that both at the time of his or her graduation from law school and the start of his or her tenure no district examination was administered in this district.

*Id.*

**7.** The *pro hac vice* candidate shall also state (1) "[t]he court(s) in which the movant is

admitted to practice law"; and (2) "[i]f any complaint for unethical misconduct, disciplinary proceeding, or criminal charges involving the movant are currently pending before any court or jurisdiction." *Id.*

**8.** There appears to be a circuit split on whether an out-of-state attorney has an actual right—as opposed to a mere privilege—to appear *pro hac vice.* Compare *Thomas v. Cassidy,* 249 F.2d 91, 92 (4th Cir.1957) (noting that "[p]ermission . . . to appear *pro hac vice* . . . is not a right but a privilege . . .") and *Atchison, T. & S.F.R. Co. v. Jackson,* 235 F.2d 390, 393 (10th Cir.1956) (same) *with Schlumberger Technologies, Inc. v. Wiley,* 113 F.3d 1553, 1562–63 (11th Cir.1997) (concluding that "[b]inding circuit precedent requires a showing of unethical conduct . . . in order to justify the denial of an applicant's *pro hac vice* admission") and *Fuller v. Diesslin,* 868 F.2d 604, 607 n. 3 (3d Cir.1989), *cert. denied,* 493 U.S. 873, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989) (finding that *pro hac vice* applicant has a "[p]resumption that [his] request should be granted unless considerations of judicial administration supervene").

*Const. Co. v. aRusso*, 96 F.3d 566, 576–77 (1st Cir.1996) (quoting *Frazier v. Heebe*, 482 U.S. 641, 651 n. 13, 107 S.Ct. 2607, 2614 n. 13, 96 L.Ed.2d 557 (1987)); *see also In re Clark*, No. 88–5152, 861 F.2d 263, 1988 WL 105310, at *3 (4th Cir.1988) (unpublished table opinion) (affirming a district judge's revocation of an attorney's *pro hac vice* status for failing to attend trial).[9] This District is not the exception; the local rule confers the Court with ample discretion to deny *pro hac vice* admission. *See* D.P.R. Civ. R. 83A(f) ("The Court will not refund the [filing] fee if the [*pro hac vice* ] motion is denied."); *cf. id.* ("The Court may at any time revoke *pro hac vice* admission for good cause without a hearing."); *see also Puerto Rico American Ins. Co. v. Rivera–Vazquez*, 603 F.3d 125, 133 (1st Cir.2010) (noting that district courts have "[b]road discretion in the administration and enforcement of its own local rules") (citing *United States v. Diaz–Villafane*, 874 F.2d 43, 46 (1st Cir.1989)).

■ Notwithstanding this latitude, and as noted above, "[t]he rule of a district court relating to membership in its bar may not violate the United States Constitution and must conform to any Act of Congress conferring authority in that respect." *Frazier*, 482 U.S., at 654, 107 S.Ct., at 2616 (Rehnquist, C.J., dissenting). That is why in *United States v. Panzardi Alvarez*, 816 F.2d 813, 818 (1st Cir.1987), a *criminal* case, the First Circuit reversed the trial court's denial of out-of-state attorney's *pro hac vice* admission (the sole counsel of accused's choice), finding that it constituted a Sixth Amendment violation. Specifically, the *Panzardi* court held:

We recognize that the District Court of Puerto Rico must be able to regulate the conduct of attorneys who practice before it. The sixth amendment, however, does not countenance the mechanistic application of a rule that permits a district court, without articulating any grounds, to deny a defendant his right to counsel of choice. Local rules of court designed to regulate attorney conduct cannot unduly handicap the constitutional right of an accused to counsel of his choice.

*Id.* at 817 (citing *Lefton v. City of Hattiesburg*, 333 F.2d 280, 285–86 (5th Cir.1964)). The local rule in question in *Panzardi*— which has since been abrogated—limited an attorney's *pro hac vice* admission to one case per year. *Id.* at 816 (citing D.P.R. Civ. R. 204.2 (repealed)). Applying Fifth Circuit precedent, the *Panzardi* court held that, when considering *pro hac vice* motions, trial courts should "[p]roperly balance[ ] the defendant's interest in retaining counsel of his choice against the public's interest in the prompt, fair and ethical administration of justice." *Id.* at 817 (citing *United States v. Dinitz*, 538 F.2d 1214, 1219–24 (5th Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *Ross v. Reda,* 510 F.2d 1172, 1173–74 (6th Cir.1975), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975)).

■ Lastly, in denying a properly articulated *pro hac vice* application, a court must state its reasons in writing; such justification must respond to a general judicial policy. *Roma Const. Co.*, 96 F.3d at

---

**9.** A comprehensive analysis of the rules of other Federal District Courts regarding eligibility and discipline appears as an Appendix to a study conducted by Professor Burton Agata. Rydstrom, 33 A.L.R. Fed. 799 § 2[a] (1977) (citing Burton Agata, *Admissions and Discipline of Attorneys in Federal District*

*Courts: A Study and Proposed Rules*, 3 Hofstra L.Rev. 249 (1975)). According to Professor Agata's study, some District Courts' local rules explicitly provide for *pro hac vice* appearances, whereas others do not, but they all allow such appearances. *Id.*

577; *U.S. v. Ries,* 100 F.3d 1469 (9th Cir. 1996).

### Applicable Law and Analysis

*Whether Matthews and Fullmer's appearances in this District should be deemed pro hac vice*

Matthews and Fullmer posit that their *pro hac vice* appearances in this District are neither frequent nor numerous. Docket # 97, p. 8. For the reasons that follow, the Court rejects such contention.

To begin, the Latin phrase *pro hac vice* means: "For this occasion or particular purpose." Black's Law Dictionary, 1331 (9th ed. 2009). This phrase "usually refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case." *Id.; Eagle Ins. Co. v. Johnson,* 982 F.Supp. 1456, 1459 (M.D.Ala.1997) (citation omitted), *aff'd,* 162 F.3d 98 (11th Cir.1998). It is of special importance that the Supreme Court has described *pro hac vice* attorneys as "[o]ne-time or occasional practitioners...." *Frazier,* 482 U.S., at 641, 107 S.Ct., at 2612.

■ As a corollary of this definition, "[a]dmission *pro hac vice* is temporary and limited in character and is not intended to be requested by a practitioner on a frequent basis." *In re Reza,* 138 B.R. 190, 191 (Bkrtcy.S.D.Ohio 1992). The American Bar Association highlights this conclusion, providing in its rules that a court may deny *pro hac vice* admission if "[t]he applicant has engaged in such frequent appearances as to constitute regular practice in [a] state." Model Rule on Pro Hac Vice Admission R. I(D)(3)(a) (2002), *available at* (http://www.americanbar.org/content/dam/aba/migrated/cpr/mjp/report_201f.authcheckdam.pdf).

■ Unfortunately, the definition of "regular" practice is less than pellucid. As previously indicated, before the *Panzardi* decision in 1987, a local rule of this District limited an attorney's *pro hac vice* admission to one case per year. D.P.R. Civ. R. 204.2 (repealed). While *Panzardi* invalidated such numerical restriction *as applied to criminal cases,* the court "[i]ntimate[d] no opinion as to the application of Local Rule 204.2 in civil cases...." *Panzardi,* 816 F.2d at 818 n. 4. Besides, the Sixth Amendment does not apply to civil cases, as there is no such constitutional safeguard for denial of chosen counsel in this type of case. *Young v. City of Providence ex rel. Napolitano,* 404 F.3d 4, 24 (1st Cir.2005) (citing *Kevlik v. Goldstein,* 724 F.2d 844, 848–49 (1st Cir.1984)). Obviously, then, *Panzardi* does not control this instance.

In *Sanders v. Russell,* 401 F.2d 241, 245 (5th Cir.1968), a case cited by *Panzardi,* the Fifth Circuit invalidated a similar one-case-per-year rule in Mississippi. In *Sanders,* an out-of-state attorney appealed the district court's denial of his *pro hac vice* admission, maintaining that because he represented the rights of minorities in a non-fee generating civil rights case, the Mississippi local rule "[a]ffected fundamental rights and that its adoption was beyond the authority of the District Court." *Id.* at 244. The Fifth Circuit agreed. Noting that "[i]t is no overstatement that in Mississippi and the South generally [African–Americans] with civil rights claims or defenses have often found securing representation difficult," the *Sanders* court concluded that the local rule in question "[c]ontravene[d] the Congressional intent as embodied in the civil rights act." *Id.* at 245 (citation omitted).

The *Sanders* Court seemingly established that, in non-fee generating civil rights cases, numerical limitations on the

number of *pro hac vice* appearance were facially invalid, concluding that "[i]t is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation." *Id.* at 245–46. Again, *Sanders* only extends to civil rights cases. Because the present case is not a civil rights one, *Sanders* is inapposite.

The First Circuit nonetheless followed *Sanders* in *Panzardi* and held:

> [W]e cannot discern how a simple numerical limitation on the number of *pro hac vice* appearances per year advances the district court's legitimate interest in regulating the conduct of its attorneys. Our skepticism about the propriety of such a rule is heightened by the fact that its application can deprive a criminal defendant of his sixth amendment rights. . . .

*Panzardi*, 816 F.2d at 818.

It is then unsurprising that Matthews and Fullmer rely heavily on *Sanders* and *Panzardi* to argue that their pattern and number of *pro hac vice* appearances in this District should be of no consequence.[10] This argument carries some

weight. Admittedly, decorum, dignity, and good character might not be advanced by a numerical limitation on the number of appearances. But the latter can nevertheless give effect to the plain meaning and purpose of the phrase *pro hac vice*: an occasional practitioner. *Frazier*, 482 U.S., at 641, 107 S.Ct., at 2612. And, in any event, *Panzardi* and *Sanders* leave serious doubt as to their controlling precedent in the context of a personal injury diversity case.

Said differently, the absence of a bright-line rule—e.g., a constraint on the number of *pro hac vice* appearances—hinders a court's ability to uphold the plain and unambiguous definition of this phrase. *Cf. Union Bank v. Wolas*, 502 U.S. 151, 158 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." (citing *Toibb v. Radloff*, 501 U.S. 157, 164, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145 (1991))).[11]

It is thus necessary to examine the ordinary meaning of "occasional" and "frequent" to ascertain whether Matthews and Fullmer's *pro hac vice* appearances com-

---

**10.** Matthews and Fullmer also argue "[t]hat [t]here is no evidence or allegation that [they] lack decorum or dignity, that they are incompetent, that they lack good character, that they are not amenable to service or that they are not amenable to discipline." Docket # 97, p. 7. This is not entirely true. On October 21, 2011, plaintiffs moved to amend the complaint *for the only purpose of adding a new party See* Docket # 76 ¶¶ 6 & 8. But, as defendants have correctly pointed out to this court, plaintiffs instead also amended the liability allegations contained in the original complaint. Co-defendant San Juan Gas Inc. referred to this move as a "squeeze play." Docket # 80, p. 3. Further, according to defendants, Matthews and Fullmer added language to the Joint Case Management Memorandum (that the depositions of the plaintiffs should be taken in Connecticut) without the

defendant's knowing they had unilaterally included this language prior to filing that joint pleading. Docket # 65, p. 12.

**11.** Some states impose a numerical limit on *pro hac vice* appearances per year. Clint Eubanks, *Can I Conduct This Case in Another State? A Survey of State Pro Hac Vice Admission*, 28 J. Legal Prof. 145 (2004) (citing Ala. R. Admis. 7 (restricting appearances to five per year unless good cause is established); D.C.App.Ct. R. 49 (limiting non-resident attorney to five applications per year); Fla. R. Jud. Admin. 2.061 (permitting only three *pro hac vice* appearances per year); Miss. R.App. P. 46 (limiting appearances to five per year); Mont. Ct. Admis. R. § 4 (limiting *pro hac vice* appearances to two per attorney, unless good cause is shown)).

port to the meaning of this phrase. *See e.g., Mullane v. Chambers,* 333 F.3d 322, 330 (1st Cir.2003). The Merriam–Webster Dictionary defines "occasional": (1) "of or relating to a particular occasion," or (2) "created for a particular occasion" or (3) "encountered, occurring, appearing, or taken at irregular or infrequent intervals", or (4) "acting in a specified capacity from time to time." Merriam–Webster's Collegiate Dictionary 858 (11th ed.2003). The term "frequent," in contrast, is construed by the same dictionary as (1) "common, usual," or (2) "acting or returning regularly or often." *Id.* at 500.

▮▮▮ Turning to the facts of this case, it cannot be gainsaid that Matthews and Fullmer's four *pro hac vice* appearances in 2011 are occasional because such appearances bear no relation "to a particular occasion." Their *pro hac vice* modus operandi is far from being "from time to time." True, their fourteen appearances over the last seventeen years, which average less than one case per year, are neither "numerous" nor "profuse," as Matthews and Fullmer point out. But this taken-as-a-whole argument trumps reality. Since 2010, Matthews and Fullmer's appearances *pro hac vice* have multiplied, thus falling under the purview of the word "frequent."

To be sure, it is their current appearances in this District that concern this court. They *currently appear* in six active or open cases. *See* Civ Nos. 11–1273, 11–1285, 11–1368, 11–903, 10–1799, 10–1320. Six active cases cannot seriously be considered "occasional." The term frequent, by contrast, more accurately describes their pattern of "acting or returning regularly" to practice law in this District. *E.g.,* Va. R. Admis. 8.0 (*describing two appearances within past two years as "frequent,"* enough to justify denial of *pro hac vice* admission).

Moreover, there is no allegation that plaintiffs had a particular reason to re-

quest Matthews and Fullmer's presence in this case. *See Roma Const. Co.,* 96 F.3d at 577. The plaintiffs in *Roma Const. Co.,* for instance, "identified specific, logical reason[s]" to justify their request for out-of-state counsel G. Robert Blakey to represent them in a RICO case: he had been described as "the acknowledged author of the federal RICO statute and of excellent commentaries on RICO application." *Id.* at 576 & n. 6 (internal quotation marks and citations omitted). Simply put, in both *Sanders* and *Roma Const. Co.,* the trial court's denial of the *pro hac vice* appearances compromised plaintiffs' right to an adequate representation. But, as fully discussed below, no such peril is present here because this personal injury action is governed by Puerto Rico civil-law. And there is no dearth of personal injury attorneys in Puerto Rico. Hence, neither *Sanders,* nor *Panzardi,* nor *Roma Const. Co.* control here.

For the reasons stated, it is this court's opinion that Matthews and Fullmer's appearances in this District amount to regular practice of law and, as such, run afoul of the plain and unambiguous meaning of the phrase *pro hac vice.* Not only is this conclusion consistent with the definition of this phrase, it is also in conformity with the *pro hac vice* rules of many states. *See e.g.,* Ariz. Sup.Ct. R. 33 ("[R]epeated appearances ... may be cause for denial of the motion."); Cal. R. Ct. 983 ("[R]epeated appearances by any persons or members of a single law firm ... shall be cause for denial."). Countenancing Matthews and Fullmer's convenient interpretation, moreover, would turn the meaning of this Latin phrase on its head. Hence, this court declines such invitation.

*Competency to practice under the Puerto Rico civil-law system*

A few remarks regarding this court's concern on competency is in order. It

should go without saying that, in diversity cases such as this one, state law governs the substantive outcome. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Essex Ins. Co. v. BloomSouth Flooring Corp.,* 562 F.3d 399, 403 (1st Cir.2009). Unquestionably, this personal injury action arises in the "field of torts," which in turn is controlled— "[b]oth in form and in content—by the civil law system." *Valle v. American International Insurance Co.,* 108 D.P.R. 692, 695, 8 P.R. Offic. Trans. 735, 736 (1979) (Trias, C.J.); *Gierbolini v. Employers Fire Insurance Co.,* 104 D.P.R. 853, 855, 4 P.R. Offic. Trans. 1197 (1976) (Trias, C.J.); *see also Colmenares Vivas v. Sun Alliance Ins. Co.,* 807 F.2d 1102, 1108 (1st Cir.1986) (Torruella, J., dissenting). As this court has previously observed, "[e]ven after a century of influence from the United States' common law system, Puerto Rico's legal system remains one where the legislature is the only one with power to create the law." *Martinez De Jesus v. Puerto Rico Elec. Power Authority,* 268 F.Supp.2d 112, 114 (D.P.R.2003).

Similarly, the First Circuit has consistently recognized that, when it comes to private law disputes, Puerto Rico is a civil-law jurisdiction, ruled by a Civil Code derived from Spain, *see e.g., Marrero–Garcia v. Irizarry,* 33 F.3d 117, 122 (1st Cir.1994); *Alvarez–Crespo v. Olavarria–Rivera,* 994 F.2d 35, 36 (1st Cir.1993), and as then Circuit Judge Breyer sagaciously observed, "[i]n interpreting the Civil Code of Puerto Rico ... authoritative commentaries on analogous provisions of the Spanish Civil Code are more persuasive than common law analogies, which are inapplicable but for purposes of comparative analysis." *Republic Security Corp. v. Puerto Rico Aqueduct and Sewer Authority,* 674 F.2d 952, 958 (1st Cir.1982) (citations omitted); *see also Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc.,* 96 F.3d 10, 15 (1st Cir.1996) (noting that Puerto Rico federal courts sitting in diversity jurisdiction, "[e]schew[ ] common law principles of contract interpretation in favor of ... [the] civil code derived from Spanish law") (citing *Guevara v. Dorsey Labs., Div. of Sandoz, Inc.,* 845 F.2d 364, 366 (1st Cir.1988)).

The Supreme Court of Puerto Rico certainly has welcomed the First Circuit's "awareness" of the "historic and legal peculiarities" of Puerto Rico law, commending the Boston-based Court of Appeals for its "[a]dequate use of the certification procedure ... [and] exemplary sensibility and respect towards our system of law." *Ocasio Juarbe v. Eastern Airlines, Inc.* 125 D.P.R. 410, 415–16, P.R. Offic. Trans. (1990) (Hernandez–Denton, J.) (citing S. Breyer, *The Relationship Between the Federal Courts and the Puerto Rico Legal System,* 53 Rev. Jur. U.P.R. 307 (1984)). Importantly, the First Circuit echoed Justice Holmes' command, who, writing for the Supreme Court almost a century ago, insisted that the Court, when applying Puerto Rico law to matters of local concern, should defer to the decisions of the Commonwealth's Supreme Court. And, moreover, that federal courts should not reassemble Puerto Rico law "according to common law conceptions." *Diaz v. Gonzalez,* 261 U.S. 102, 105–06, 43 S.Ct. 286, 287, 67 L.Ed. 550 (1923) (Holmes, J.).

In line with these principles, attorneys practicing diversity tort-law in this District have to "[c]onsult civil law sources, for these are the sources that in large measure constitute the basis of the Commonwealth's own law[;] the law that [the First Circuit] [is] bound to follow." *Reyes–Cardona v. J.C. Penney Co., Inc.,* 694 F.2d 894, 896–97 (1st Cir.1982) (Breyer, J.); *see also V. Suarez & Co., Inc. v. Dow Brands, Inc.,* 337 F.3d 1, 8 (1st Cir.2003) ("The civil law is a law of the professors.... The

common law is still a law of the judges." (quoting J.H. Merryman, *The Civil Law Tradition* 56–57 (2d ed.1985))). *See generally* Jose Trias–Monge, *El choque de dos culturas juridicas en Puerto Rico* (1991); Trias Monge, *La crisis del derecho en Puerto Rico*, 49 Rev.Jur. U.P.R. 1 (1980). This is buttressed by another compelling fact: the Puerto Rico Civil Code has governed this area of the law for more than a century.[12]

Whereas delving into the annals of civil-law ordinarily poses no complication for members of the Puerto Rico bar—as the vast majority of them speak Spanish and are well-versed in the civilian tradition, for out-of-state attorneys trained in the common-law that understand little or no Spanish, and who are members neither of the federal nor local Puerto Rico bars, things could be more onerous. *Cf. Reyes–Cardona*, 694 F.2d at 897 ("[T]he fact that [Civil Law] sources are relatively unfamiliar to federal appellate courts and often unavailable in English can create problems."). Such complications are compounded by the lack of official translations of opinions in Spanish from the Puerto Rico Supreme Court, particularly those issued in the past few years.

Against this legal backdrop, most—if not all—of *pro hac vice* attorneys Matthews and Fullmer's appearances in this District involve tort-action suits, e.g., civil cases nos. 11–1273, 11–1368, 10–1799, 10–1320, 09–1229, 07–1649, 07–1080, 06–1921, 05–1858, 04–2352, 00–2353, and, of course, the present instance. In diversity cases, an out-of-state attorney's unfamiliarity with civil-law may well jeopardize a party's right to adequate and competent representation. *See Huongsten Production Import & Export Co. Ltd. v. Sanco Metals LLC*, 810 F.Supp.2d 418, 433–34 (D.P.R.2011) (rejecting defendants' reliance on federal law that eschews controlling Puerto Rico law); *Carr v. Puerto Rico Ports Authority*, 806 F.Supp.2d 494, 506–02 (D.P.R.2011) (dismissing claims after rejecting plaintiff's common law contentions in the context of principal/contractor liability); *Martinez De Jesus*, 268 F.Supp.2d at 114 ("First, we must remind Defendants that Puerto Rico is a civil law jurisdiction.").

Fortunately, these concerns are usually offset by the local rule's requirement that *pro hac vice* attorneys appear alongside local counsel. *See* D.P.R. Civ. R. 83A(f) ("All process, notices, and other papers shall be served on [local counsel]. The attendance of [local counsel] is required at all proceedings, unless excused by the Court."). A local counsel's education in civil-law precepts, moreover, is of utmost importance as it compensates for the *pro hac vice* counsel's usual lack thereof.[13] *Cf. Young*, 404 F.3d at 24 (citing D.R.I. Local R. 5(c)(2)) ("The local rules require ... local counsel[ ] to be deeply involved in all proceedings in the case conducted by *pro*

---

**12.** In fact, as early as the dawn of the twentieth century, some commentators extolled Puerto Rico's civil-law heritage. *See* William W. Howe, *The Law of Our New Possessions*, 9 Yale L.J. 379 (1900) (discussing the evolution of Spanish laws that governed Louisiana and Puerto Rico before U.S. acquisition, and noting that "[i]n order to understand the present condition of law and jurisprudence in [Puerto Rico], it is necessary to begin with the history of Spain"); Lloyd McKim Garrison, *The Penal Code of Cuba and Porto Rico*, 13 Harv. L.Rev. 124, 129 (1899) (noting that the Civil Code was "[w]ritten with a clearness and terseness that puts to shame our modern verbose statute-writing").

**13.** The local rules, however, do not require local counsel's admission to the Commonwealth bar but merely to this District. The prospect of this *bizarre result* is that, theoretically, attorneys with no civil-law training could practice in diversity cases in this District.

*hac vice* counsel."). *See also* D.P.R. Civ. R. 83A(f).

The reasons for this rule abound. Suffice it to say that the local counsel rules ameliorate the difficulties presented by the *pro hac vice* counsel's customary lack of proximity to Puerto Rico and unfamiliarity with its customs and substantive law. *See e.g., Butler v. Biocore Medical Technologies, Inc.,* 348 F.3d 1163, 1174–75 (10th Cir.2003) (citing *Ingemi v. Pellino & Lentz, P.C.,* 866 F.Supp. 156, 162 (D.N.J. 1994) (explaining that "[l]ocal rules requiring local counsel to take more than a [*de minimis*] role" are crucial because "members of our Bar are familiar with the rules and customs of this Court and are expected to both educate *pro hac vice attorneys* on, and enforce, those rules and customs") and *Mowrer v. Warner–Lambert Co.,* No. 98–2908, 1998 WL 512971, at *1 (E.D.Pa. Aug. 19, 1998) ("[Local counsel] rule [is] predicated upon a notion that familiarity with local rules and procedures advances the goal of the efficient administration of justice.")).[14] What is more, this court has the obligation to ensure that attorneys are adequately prepared to represent their clients, especially in diversity cases.[15]

Because the function of local counsel is something more than a matter of *pro forma* or protocol, this court expects local counsel to take an active role in the representation of their clients, thereby assuring that the *pro hac vice* attorneys are well-informed as to the applicable civil-law precepts in diversity cases. Such safeguard is essential to ensure the proper practice of civil-law by *pro hac vice* attorneys unfamiliar with the civilian tradition.

### Conclusion

Matthews and Fullmer's six active *pro hac vice* appearances during the last two years render them incompatible with the definition of this phrase. However, although the collective weight of the foregoing discussion supports the revocation of their admission *pro hac vice,* they have informed the Court that they "intend" to seek admission to the Puerto Rico Federal Bar by taking the required examination. The Court welcomes their interest, encourages Matthews and Fullmer to join this Bar, and takes judicial notice that the next Federal Bar Examination will be offered on May 5, 2012.[16] Hence, in order to continue practicing law before this court, Matthews and Fullmer shall apply for regular admission to the District Court of Puerto Rico.

**IT IS SO ORDERED.**

---

**14.** The Supreme Court recently observed the dangers that may arise from a local counsel's "minimal participation" in a case, e.g., the "abandonment" of a client. *Maples v. Thomas,* 565 U.S. ——, 132 S.Ct. 912, 925–26, 181 L.Ed.2d 807 (2012).

**15.** Of course, this Court's preoccupation does not extend to cases involving federal questions, among other areas that require no civil-law training.

**16.** Mailed applications must be postmarked no later than April 11, 2012. *See* United States District Court for the District of Puerto Rico, Public Notice: Information on Bar Examination, available at http://www.prd. uscourts.gov/courtweb/n—bar.aspx (last accessed January 17, 2012). The Federal Bar Examination Form is available there as well.